16 CV 0502 (SJ)(SMG)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


NATASHA NATOO,

                                                Plaintiff,

                    -against-

ALI MIRANDA,

                                                Defendant.


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MIRANDA'S POST-TRIAL MOTION RENEWING HIS MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50; MOTION FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59, DUE TO AN IMPROPER RULING PURSUANT TO FED. R. CIV. P. 48(B); AND MOTION FOR REMITTITUR**


*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:*
*Morgan McKinney & Erin Ryan*
*Tel:  (212) 356-2012/5056*
*Matter #:  2016-003580*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

RELEVANT FACTUAL BACKGROUND ........................................................................ 1

ARGUMENT

PURSUANT TO RULE 50 OF THE FEDERAL RULES OF CIVIL
PROCEDURE PLAINTIFF'S FALSE ARREST AND EXCESSIVE FORCE
CLAIMS FAIL AS A MATTER OF LAW, AND LT. MIRANDA IS ENTITLED
TO QUALIFIED IMMUNITY ........................................................................... 3

    A.  Plaintiff's False Arrest Claim Fails As A Matter Of
Law ....................................................................................................................... 4

    B.  Plaintiff's Excessive Force Claim Fails As A Matter Of
Law ....................................................................................................................... 7

        1.  Plaintiff's Version of Events ................................................................. 7

        2.  Plaintiff's Allegations are Contradicted by her
Mugshot ................................................................................................. 8

        3.  Plaintiff's Allegations are Contradicted by her
Medical Records .................................................................................... 9

        4.  The Force Used To Restrain Plaintiff Was Not
Excessive ............................................................................................... 11

    C.  Lt. Miranda is Entitled to Qualified Immunity ............................................. 12

        1.  False Arrest ........................................................................................... 13

        2.  Excessive Force .................................................................................... 14

DEFENDANT SHOULD BE GRANTED A NEW TRIAL
PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 59, BECAUSE THE COURT
IMPROPERLY ACCEPTED A NON-UNANIMOUS
VERDICT, IN VIOLATION OF FED. R. CIV. P. 48(b) ..................................... 15

**Page**

THE JURY'S DAMAGE AWARDS MUST BE SET
ASIDE AS UNSUPPORTED OR REMITTED ..................................................... 17

A. The Jury's Compensatory Damages Award Should Be
Set Aside or Reduced ....................................................................................18

    1. False Arrest ............................................................................................. 19

    2. Excessive Force ..................................................................................... 20

B. The Jury's Award Of Punitive Damages Must Be
Vacated ...........................................................................................................21

    1. Comparison with Similar Cases ............................................................ 22

CONCLUSION.......................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                      <u>Pages</u>

Alla v. Verkay,
    979 F. Supp. 2d 349 (E.D.N.Y. 2013) .......................................................................19

Anderson v. Creighton,
    483 U.S. 635, 641 (1987)........................................................................................... 12

Andres v. United States,
    333 U.S. 740 (1948)...................................................................................................16

Bell v. Wolfish,
    441 US. 520 (1979)....................................................................................................11

Berger v. Schmitt,
    91 F. App'x 189 (2d Cir. 2004) ..................................................................................6

BMW of N. Am. v. Gore,
    517 U.S. 559 (1996)...................................................................................................21

Bove v. New York City,
    No. 98 CV 8080 (HB), 1999 U.S. Dist. LEXIS 12112
    (S.D.N.Y. 1999) .........................................................................................................10

Brady v. Wal-Mart Stores, Inc.,
    531 F.3d 127 (2d Cir. 2008).........................................................................................4

Brown v. City of New York,
    862 F.3d 182 (2d Cir. 2017)........................................................................................12

Byrd v. Blue Ridge Rural Electric Cooperative, Inc.,
    356 U.S. 525 (1958)...................................................................................................18

Cabral v. City of New York,
    No. 12 Civ. 4659 (LGS), 2015 U.S. Dist. LEXIS 105392
    (S.D.N.Y. Aug. 11, 2015) ..........................................................................................23

Caldarola v. Calabrese,
    298 F.3d 156 (2d Cir. 2002).........................................................................................4

Carey v. Piphus,
    435 U.S. 247 (1978)...................................................................................................19

Carpenter v. City of New York,
    984 F.Supp.2d 255 (S.D.N.Y. 2013)...........................................................................5

**Cases**                                                                                                    **Pages**

Curry v. Montgomery,
   Southern District of Florida (verdict received August 31, 2009) ...........................................21

Dancy v. McGinley,
   843 F.3d 93 (2d Cir. 2016).............................................................................................19

Davis v. Klein,
   No. 11 CV 4868 (ENV), 2013 U.S. Dist. LEXIS 153469
   (E.D.N.Y. Oct. 25, 2013) ...............................................................................................9

Devenpeck v. Alford,
   543 U.S. 146 (2004).........................................................................................................5

DiSorbo v. Hoy,
   343 F.3d at 176 ........................................................................................................24, 25

Earl v. Bouchard Transp. Co.,
   917 F.2d 1320 (2d Cir. 1990)........................................................................................18

Faruki v. City of New York,
   517 Fed. App'x. 1 (2d Cir. 2013)..............................................................................10, 14

Gasperini v. Center for Humanities, Inc.,
   518 U.S. 415 (1996).......................................................................................................18

Goudeau v. Andrew, et al.,
   Eastern District of Texas (verdict received July 15, 2015).........................................20

Graham v. Connor,
   490 U.S. 386 (1989).......................................................................................................11

Grossheim v. Freightliner Corp.,
   974 F.2d 745 (6th Cir. 1992) ........................................................................................16

Guzman v. Jay,
   303 F.R.D. 186 (S.D.N.Y. 2014) ..................................................................................18

Hallenbeck v. Albany,
   99 A.D.2d 639 (App. Div. 3d Dep't 1981) ..................................................................20

Ismail v. Cohen,
   899 F.2d 183 (2d Cir. 1990)....................................................................................23, 24

Jaegly v. Couch,
   439 F.3d 149 (2d Cir. 2006)............................................................................................5

| Cases | Pages |
|---|---|

Jenkins v. City of New York,
   478 F.3d 76 (2d Cir. 2007)............................................................................4

Johnson v. Louisiana,
   406 U.S. 356 (1972)....................................................................................16

King v. Macri,
   993 F.2d 294 (2d Cir. 1993)........................................................................24

Kinneary v. City of New York,
   601 F.3d 151 (2d Cir. 2010)..........................................................................4

Kirsch v. Fleet St., Ltd.,
   148 F.3d 149 (2d Cir. 1998)........................................................................18

Lee v. Edwards,
   101 F.3d 805 (2d Cir. 1996)........................................................................25

Leibovitz v. City of New York,
   14-CV-7106 (KAM)(LB), 2018 U.S. Dist. LEXIS 34972 at *19
   (E.D.N.Y. Mar. 2, 2018) .............................................................................13

Lennon v. Miller,
   66 F.3d 416, 421 (2d Cir. 1995)...........................................................13, 14

Lynch v. Ackley,
   811 F.3d 569, 576 (2d Cir. 2016)................................................................12

Madden v. Hamilton Cnty. Dep't of Educ.,
   No. 13-CV-377, 2016 U.S. Dist. LEXIS 104487 (E.D. Tenn. Aug. 9, 2016) .......................16

Malley v. Briggs,
   475 U.S. 335, 341 (1986)............................................................................12

Mason v. City of New York,
   949 F. Supp. 1068 (S.D.N.Y. 1996).............................................................20

Milfort v. Prevete,
   3 F. Supp. 3d 14 (E.D.N.Y. 2014) .........................................................22, 23

Miner v. City of Glens Falls,
   999 F.2d 655 (2d Cir. 1993)........................................................................18

Munafo v. Metropolitan Transp. Auth.,
   381 F.3d 99 (2d Cir. 2004)..........................................................................18

**Cases**        **Pages**

N.A.A.C.P. v. AcuSport, Inc.,
   271 F. Supp. 2d 435 (E.D.N.Y. 2003) ............................................................16, 17

Oliveira v. Mayer,
   23 F.3d 642, 648 (2d Cir. 1994)......................................................................12

Omor v. City of New York,
   No. 13-CV-2439, 2015 U.S. Dist. LEXIS 24135, 2015 WL 857587
   (S.D.N.Y. Feb. 27, 2015)..................................................................................6

Panetta v. Crowley,
   460 F.3d 388 (2d Cir. 2006)............................................................................5

Payne v. Jones,
   711 F.3d 85 (2d Cir. 2012)..................................................................22, 23, 24

Pearson v. Callahan,
   555 U.S. 223, 231 (2009)................................................................................12

People v. Munroe,
   18 Misc. 3d 9, 853 N.Y.S.2d 457 (N.Y. Sup. App. Term 2007) .............................5

People v. Reape,
   22 Misc. 3d 615 (N.Y.C. Crim. Ct. 2008) ........................................................6

Pierson v. Ray,
   386 U.S. 547 (1967)......................................................................................4

Posr v. Court Officer Shield No. 207,
   180 F.3d 409 (2d Cir. 1999)............................................................................4

Ricciuti v. New York City Transit Auth.,
   124 F.3d 123 (2d Cir. 1997)............................................................................5

Saucier v. Katz,
   533 U.S. 194, 205 (2001)................................................................................12

Scott v. Henrich,
   39 F.3d 912, 915 (9th Cir. 1994) ...............................................................12-13

Shadd v. White,
   District Court of Ohio (verdict received March 12, 2011) ....................................21

Shu-Tao Lin v. McDonnell Douglas Corp.,
   742 F.2d 45 (2d Cir. 1984)............................................................................18

**Cases**                                                                              **Pages**

Smith v. Lightning Bolt Prods., Inc.,
   861 F.2d 363 (2d Cir. 1988)..................................................................................15

State Farm Mut. Auto. Ins. Co. v. Campbell,
   538 U.S. (2003)......................................................................................................21, 22

Tesser v. Bd. of Educ. of City Sch. Dist. of City of N.Y.,
   190 F. Supp. 2d 430 (E.D.N.Y. 2002) ...............................................................15

Theodat v. City of N.Y.,
   16-cv-3977 (FB)(SJB), 2019 U.S. Dist. LEXIS 157274
   (E.D.N.Y. Sep. 13, 2019)......................................................................................23, 24

This is Me Inc. v. Taylor,
   157 F.3d 139 (2d Cir. 1998)..................................................................................4

Tigges v. AM Pizza, Inc.,
   No. 16-10136-WGY, 2016 U.S. Dist. LEXIS 100366 (D. Mass. July 29, 2016)....................16

Turley v. ISG Lackawanna, Inc.,
   774 F.3d 140 (2d Cir. 2014)..................................................................................22

**Statutes**

42 U.S.C. § 1983 ...........................................................................................................1, 4, 18

Fed. R. Civ. P. 39(c) .....................................................................................................17

Fed. R. Civ. P. 48(b) .....................................................................................................1, 15, 17

Fed. R. Civ. P. 50...........................................................................................................3, 4, 17

Fed. R. Civ. P. 50(a) .....................................................................................................1

Fed. R. Civ. P. 50(b) .....................................................................................................1, 3, 4

Fed. R. Civ. P. 59...........................................................................................................1, 15, 17

Fed. R. Civ. P. 59(a) .....................................................................................................15

Fed. R. Civ. P. 59(e) .....................................................................................................18

N.Y. P.L. § 140.00(5) ...................................................................................................5, 6

N.Y. P.L. § 140.05 .........................................................................................................5, 13

## PRELIMINARY STATEMENT

Plaintiff brought this action against defendant Lieutenant Ali Miranda alleging claims for false arrest and excessive force under 42 U.S.C. § 1983, stemming from an incident that occurred on February 4, 2013 at the 67th precinct. Lt. Miranda maintains that he had probable cause to arrest plaintiff and denies using excessive force to restrain plaintiff.

Trial of this matter commenced on January 6, 2020. The claims tried before the jury were plaintiff's allegations of false arrest and excessive force under federal law against defendant Lt. Miranda. At the close of plaintiff's case, and again at the close of all evidence, defendant moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) and (b). The Court reserved on defendant's motion, and the case was submitted to the jury. Id. The jury found for the plaintiff on both claims on a non-unanimous verdict, awarding $50,000 compensatory damages and $600,000 punitive damages.

Defendant now moves: (1) to renew his motion for a judgment as a matter of law pursuant to Rule 50; (2) for a new trial pursuant to Rule 59, as the Court improperly accepted a non-unanimous verdict in violation of Rule 48(b); and (3) for remittitur of the verdict.

## RELEVANT FACTUAL BACKGROUND

Trial on plaintiff's claims of false arrest and excessive force commenced on January 6, 2020. Plaintiff called herself and Lt. Miranda as witnesses, and deposition designations of non-party Officer Elias were also read into the record. At no point during the trial did plaintiff ever introduce any evidence, including her own testimony, of any alleged emotional damages as a result of the alleged incident. (See Full Tr.).

Plaintiff testified that on February 4, 2013, Lt. Miranda ordered her to leave the 67th precinct and she refused. (Tr., 60:5-13). Not only did she fail to leave, but plaintiff remained inside the vestibule of the precinct for at least fifteen minutes before Lt. Miranda eventually

placed her under arrest.  (Tr., 60:5-22).  Lt. Miranda testified that he was in uniform and on duty

at the time he directed plaintiff to leave the precinct.  (Tr., 114: 5-25 and 115:1-2).

### Plaintiff's Testimony Regarding Her Medical Treatment

On February 4, 2013, plaintiff was taken from the 67th precinct to Methodist Hospital.

(Tr., 69:20-22).  During cross-examination, plaintiff was presented with Defendant's Exhibit,

"B," her medical records from Methodist Hospital from February 4, 2013 and March 6, 2013.

(Tr., 69:20-25; 70:1-7; and 72:4-8).  Plaintiff testified that her medical records from February 4,

2013 indicated that she had "no acute distress;" nothing was wrong with her head, including no

bruising; no chest tenderness; her back was non-tender with normal alignment and range of

motion; she had a regular heart rate; no pain in her mouth; and her body was found to have a

normal range of motion, normal strength, no tenderness, and no deformity.   (Tr., 70:18-21

through 72:1-3 and 74:1-3; Defendant's Exhibit "B").  At most, plaintiff was found to have some

tenderness in her right wrist. (Tr., 71:11-13).

Plaintiff then testified that her medical records from March 6, 2013, one month after the

incident, showed that her complaints of chest pain and numbness, radiating down her left arm,

were possibly from doing pushups one week prior, and that plaintiff had normal range of motion

and normal strength in her arm. (Tr., 72:7-19; Defendant's Exhibit "B").

Plaintiff further admitted that she never went to a dentist following the incident, despite

claiming that her tooth had been chipped as a result of being slammed to the ground during the

incident. (Tr., 50:3-4; 74:4-5; and 73:18-22).  Furthermore, plaintiff admitted that she also did not

have any dental records or photographs of her teeth from before the incident, to establish the

health and appearance of her teeth prior to February 4, 2013. (Tr., 74:6-20). The only thing

plaintiff introduced into evidence to support her chipped tooth allegation was Plaintiff's Exhibit

"3," an undated photograph of plaintiff showing her teeth, which plaintiff testified was taken two weeks after the incident. (Tr., 50:10-74:9-18). However, during the course of the entire trial, plaintiff never specified which tooth was allegedly chipped, and only referred to her teeth and Plaintiff's Exhibit "3," generally. (See Full Tr.).

Finally, during her direct examination, plaintiff and her counsel unsuccessfully attempted to admit a purported photograph of her alleged physical injuries, sustained as a result of the incident. (Tr., 46: 19-25 through 49:1-25). Plaintiff had not produced the photograph to defense counsel until approximately two weeks prior to trial, despite the fact that this matter had been ongoing for approximately seven years. (Tr., 48:10-15). Plaintiff testified that the photograph was taken approximately two weeks after the incident; however, the metadata on the photograph revealed that the photograph was taken approximately two years before the incident. (Tr., 46: 19-25 through 49:1-25). As a result, the Court sustained defendant's objection to the photograph coming into evidence. (Tr., 49:19-25).

## POINT I

### PURSUANT TO RULE 50 OF THE FEDERAL RULES OF CIVIL PROCEDURE PLAINTIFF'S FALSE ARREST AND EXCESSIVE FORCE CLAIMS FAIL AS A MATTER OF LAW, AND LT. MIRANDA IS ENTITLED TO QUALIFIED IMMUNITY

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, a party that made a motion for judgment as a matter of law during the trial can renew that motion after the jury returns a verdict. Fed. R. Civ. P. 50(b). Rule 50(b) states, in relevant part:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. ... In ruling on the renewed motion, the court may: allow judgment on the verdict, if the jury

returned a verdict; order a new trial; or direct the entry of judgment
as a matter of law.

Fed. R. Civ. P. 50(b).  When deciding a Rule 50 motion, the Court must evaluate whether "'there

can be but one conclusion as to the verdict that reasonable [persons] could have reached.'"  This

is Me Inc. v. Taylor, 157 F.3d 139, 142 (2d Cir. 1998) (internal citations omitted).  The court

must "give deference to all credibility determinations and reasonable inferences of the jury" but,

may set aside a verdict when there is "such a complete absence of evidence supporting the

verdict that the jury's finding could have been the result of sheer surmise or conjecture, or the

evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons]

could not arrive at a verdict against [it]." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 133 (2d

Cir. 2008) (internal citations omitted); Kinneary v. City of New York, 601 F.3d 151, 155 (2d Cir.

2010).  Here, even in viewing the evidence in the light most favorable to plaintiff,  plaintiff's

claims fail as a matter of law, and Lt. Miranda is entitled to qualified immunity.

**A.     Plaintiff's False Arrest Claim Fails as a Matter of Law**

Probable cause is "a complete defense" to a § 1983 false arrest claim. Jenkins v. City of

New York, 478 F.3d 76, 84 (2d Cir. 2007).  Probable cause to arrest exists when officers "have

knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to

warrant a person of reasonable caution in the belief that the person to be arrested has committed

or is committing a crime." Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir.

1999).  Courts are to consider the "totality of the circumstances" and "the facts available to the

officer at the time of arrest." Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002). The

existence of probable cause defeats a claim for false arrest, even if an arrestee is ultimately

revealed to be innocent. Pierson v. Ray, 386 U.S. 547, 555 (1967).

Additionally, probable cause requires only a probability, not an actual showing, of criminal activity. Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997). Courts have recognized that "[o]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." Panetta v. Crowley, 460 F.3d 388, 396 (2d Cir. 2006).

"[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant ... it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006) (citing Devenpeck v. Alford, 543 U.S. 146 (2004)). The underlying offense that establishes probable cause to arrest need not be "'closely related to', [or] based on the same conduct as, the offense identified by the arresting officer." Devenpeck, 543 U.S. at 153-54.

Pursuant to New York Penal Law § 140.05, Trespass, a person is guilty of trespass when she knowingly enters or remains unlawfully in or upon a premises. Where, as here, an area of the premises is generally open to the public, a person "remains unlawfully" if "he defies a lawful order not to . . . remain personally communicated to him by the owner of such premises or other authorized person." Id. § 140.00(5). Thus, to establish probable cause for trespass, Defendant must show: (1) that there was a lawful order excluding Plaintiff from the premises, (2) that the order was communicated to Plaintiff by a person with the authority to make the order, and (3) that Plaintiff defied the order. Carpenter v. City of New York, 984 F.Supp.2d 255, 265 (S.D.N.Y. 2013) (citing People v. Munroe, 18 Misc. 3d 9, 853 N.Y.S.2d 457, 458 (N.Y. Sup. App. Term 2007)). In regards to a police precinct, "[a] New York Police Department officer is clearly the

custodian of such premises and its environs" and possesses the appropriate authority to order an individual to leave the precinct under § 140.00(5), because he or she is "in the best position to know whether the defendant had acted in a way that required him to be asked to leave the premises." <u>People v. Reape</u>, 22 Misc. 3d 615, 619 (N.Y.C. Crim. Ct. 2008).

In <u>Reape</u>, the Court found that there was probable cause to arrest the defendant for failing to leave the police precinct as directed.  <u>Id</u>.  The Court noted that, "[m]ost significant, is the fact that the complaint makes it clear that the defendant was asked to leave the precinct area and refused to do so." <u>Id</u>. at 616. The Court went on to explain that "Trespass does not only require that a defendant enter an area unlawfully, but one can also be in violation of that statute by remaining unlawfully. Having been told to leave the precinct, the defendant's license to be in the area was revoked." <u>Id</u>.; <u>See also</u>, <u>Berger v. Schmitt</u>, 91 F. App'x 189, 190 (2d Cir. 2004) (probable cause existed where supermarket security guard and police officer told plaintiff to leave premises but, after "start[ing] to depart," plaintiff "doubled back" and remained on premises); <u>Omor v. City of New York</u>, No. 13-CV-2439, 2015 U.S. Dist. LEXIS 24135, 2015 WL 857587, at *4 (S.D.N.Y. Feb. 27, 2015) (probable cause existed where staff of local government office told plaintiff to leave but he refused to do so).

Here, similar to <u>Reape</u>, plaintiff admitted during trial, that Lt. Miranda ordered her to leave the 67th precinct and she refused. (Tr., 60:5-13). In fact, plaintiff admitted that following Lt. Miranda's clear orders for her to leave the precinct, she not only failed to leave, but she remained inside the confines of the 67th precinct for at least fifteen minutes. (Tr., 60:5-22). Finally, there is no dispute in the record that Lt. Miranda was in uniform and on duty that day at the 67th precinct, thus giving him the clear authority to order plaintiff to leave the precinct. (Tr., 114: 5-25 and 115:1-2). Consequently, once Lt. Miranda ordered plaintiff to leave the precinct,

her license to remain in the waiting area was revoked, and once plaintiff refused to leave, Lt. Miranda had probable cause to arrest plaintiff for Trespass. Based on the foregoing, plaintiff's false arrest claim must fail as a matter of law.

**B.      Plaintiff's Excessive Force Claim Fails as a Matter of Law**

Here, plaintiff's mugshot and medical records clearly contradict plaintiff's alleged injuries. See Exhibits A and B. Given plaintiff's allegation that she had been beaten by five adult-male officers for fifteen minutes and getting her face slammed into a cell wall, these objective exhibits do not support plaintiff's story.

**1.   Plaintiff's Version of Events**

Here, plaintiff testified that Lt. Miranda followed plaintiff into the clear-glass vestibule area of the precinct and just stared at her for 15 minutes. (Tr., 60:18-22). She claims that Lt. Miranda then just ran at her and attacked, for no apparent reason, and without saying anything. (Tr., 60:18-25 and 61:1-8). Plaintiff claims that Lt. Miranda then slammed plaintiff to the ground; pushed her face into the floor; bent his knee into her back; and held her by her hair, while four other unidentified adult-male officers entered the vestibule area and began to kick and stomp on plaintiff. (Tr., 40:2-8; 61:9-25; and 62:1-6). Plaintiff alleges that five male officers joined Lt. Miranda, and were beating her for ten to fifteen minutes in front of the public, glass-door, entrance of the police precinct. (Tr., 62:10-16). Plaintiff also claims that four or five people were in the waiting room, watching her getting beaten by the five officers, and nobody did anything. (Tr., 62:17-23). According to plaintiff, the officers then picked her up and dragged her inside of the precinct. (Tr., 40:23-25 and 41:1-2).

Plaintiff testified that as a result of the entire incident in the precinct, the whole left side of her body was damaged, her left arm was out of place and hanging off of her body, and that her tooth was chipped. (Tr., 50:3-10; 71:22-24; and 73:18-22). Plaintiff testified that in the months

following the incident, she felt terrible and was still experiencing physical pain. (Tr., 46:12-15).

Plaintiff also previously testified during her March 21, 2017 Deposition, that her face was

"disfigured with black and blue marks," as a result of the incident. (Tr., 62:24-25 through 65:1-

15).[1]  At no point during the trial did plaintiff ever introduce any evidence, including her own

testimony, of any alleged emotional damages as a result of the alleged incident. (See Full Tr.)

### 2.   Plaintiff's Allegations are Contradicted by her Mugshot

Plaintiff's mugshot clearly contradicts both plaintiff's version of events and alleged

injuries related to her excessive force claim. (Defendant's Exhibit "A"). At trial, plaintiff was

confronted with Defendant's Exhibit "A," plaintiff's Mugshot containing two photographs taken

of plaintiff in connection to plaintiff's February 4, 2013 arrest. (Tr., 66: 2-25 and 67:1-12).

Plaintiff admitted that the photographs in Defendant's Exhibit "A" were taken of her following

the alleged beatings in the vestibule and cell areas of the precinct, after she had returned from the

hospital, sometime in the early morning of February 5, 2013. (Tr., Tr., 66: 2-25 and 67:1-12).

First, it is clear from these two photographs of plaintiff that there were no visible injuries

on plaintiff's face following the incident. (Defendant's Exhibit "A"). At trial, plaintiff admitted

that, at most, the photographs in her mugshot show little red looking marks and bumps on her

face. (Tr., 67:13-16). "[L]ittle red looking marks and bumps" on her face do not support a claim

of excessive force.  Given plaintiff's version of events – that she was slammed to the ground, her

face was kicked and stomped on by five male officers for fifteen minutes, and she had her face

pushed into a cell wall – these contemporaneous pictures of plaintiff directly contradict her

---

[1]  However, at trial, plaintiff claimed that this portion of her sworn deposition testimony was incorrect, and that she only sustained red marks and a little bit of swelling, further calling plaintiff's version of the events and her injuries into question. (Tr., 62:24-25 through 65:1-15).

version of events.   Given these inconsistencies between plaintiff's testimony and objective evidence, plaintiff's version of events should be not be credited.

### 3.  Plaintiff's Allegations are Contradicted by her Medical Records

Plaintiff's medical records not only contradict plaintiff's alleged injuries, but they demonstrate that plaintiff sustained nothing more than superficial injuries from this incident. In <u>Davis v. Klein</u>, the court held that "If [defendant] officers had repeatedly punched plaintiff during the arrest and booking process, as [plaintiff] alleges, it is simply not believable that the hospital records would indicate that [plaintiff] had 'no skin abrasions' and that his facial appearance was 'normocephalic and atraumatic.'"   <u>Davis v. Klein</u>, No. 11-CV-4868 (ENV), 2013 U.S. Dist. LEXIS 153469, at *10-11 (E.D.N.Y. Oct. 17, 2013).   Here, similar to <u>Davis</u>, plaintiff's medical records from February 4, 2013 show nothing but superficial injuries. (Tr., 52:23-25 through 55:1-23).

Plaintiff testified that on February 4, 2013, she was taken from the 67th precinct to Methodist Hospital. (Tr., 69:20-22).   Plaintiff was confronted with her medical records from that hospital visit during cross examination.   Plaintiff admitted that her medical records indicated that she was found to have "no acute distress;" nothing wrong with her head, including no bruising; no chest tenderness; her back was non-tender with normal alignment and range of motion; she had a regular heart rate; no pain in her mouth; and her body was found to have a normal range of motion, normal strength, no tenderness, and no deformity.  (Tr., 70:18-21 through 72:1-3 and 74:1-3; Defendant's Exhibit "B"). At most, plaintiff was found to have some tenderness in her right wrist. (Tr., 71:11-13).

Plaintiff also confirmed that her medical records from March 6, 2013, one month after the incident, indicated that plaintiff's complaints of chest pain and numbness, radiating down her left

arm, were possibly from doing pushups; and that plaintiff had normal range of motion and normal strength in her arm. (Tr., 72:7-19; Defendant's Exhibit "B").

Plaintiff further admitted that she never went to a dentist following the incident, despite claiming that her tooth had been chipped as a result of being slammed to the ground during the incident. (Tr., 50:3-4; 74:4-5; and 73:18-22). Furthermore, plaintiff admitted that she also did not have any dental records or photographs of her teeth from before the incident, to establish the health and appearance of her teeth prior to February 4, 2013. (Tr., 74:6-20). The only thing plaintiff introduced into evidence to support her chipped tooth allegation was Plaintiff's Exhibit "3," an undated photograph of plaintiff showing her teeth, which plaintiff testified was taken two weeks after the incident. (Tr., 50:10-74:9-18). However, during the course of the entire trial, plaintiff never specified which tooth was allegedly chipped, and only referred to her teeth and Plaintiff's Exhibit "3," generally. (See Full Tr.).

Here, once again, the objective evidence does not support plaintiff's claim of excessive force. Taken together, plaintiff's mugshot and medical records are irreconcilable with plaintiff's version of events. Plaintiff's medical records contradict her claimed injuries, and no contemporaneous record supports the existence of any such injuries. See Bove, No. 98 CV 8080 (HB), 1999 U.S. Dist. LEXIS 12112, at *6 (S.D.N.Y. 1999) ("There are no affidavits from the plaintiff's treating physicians or psychologists, no hospital records—in short, nothing to substantiate . . . the alleged 'beating' by the NYPD . . .").

### 4. The Force Used to Restrain Plaintiff was not Excessive

"Officers are entitled to use some degree of force when restraining a suspect during an arrest." Faruki v. City of New York. 517 Fed. App'x. 1, 2 (2d Cir. 2013). Moreover, "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or

mechanical application." Graham v. Connor, 490 U.S. 386, 396 (1989) (quoting Bell v. Wolfish, 441 US. 520, 559 (1979)).   Rather, reasonableness is determined based on the facts and circumstances of each case "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396 (citation omitted). Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97.

Since we have demonstrated *supra* that plaintiff's version of events should not be credited because it is far outweighed by the objective evidence on the record, Lt. Miranda's testimony, therefore, establishes that the force used to restrain plaintiff was reasonable. Lt. Miranda testified that upon turning away, plaintiff struck him on the left-side of his head with a book bag full of school books. (Tr., 36: 4-14; 123:13-25; and 124:3-10).  Lt. Miranda testified that the bag felt heavy when it stuck him and that plaintiff used enough force to where he instantly felt pain. (Tr., 103:18-25; 104:1-5; and 124:11-14).  Plaintiff also admitted that she made physical contact with Lt. Miranda while in the vestibule area of the precinct. (Tr., 38:22-25 and 39:1-4). Furthermore, plaintiff resisted arrest by continuously pulling her hands away and kicking Lt. Miranda several times. (Tr., 125:10-20; 127:19-25; and 128:1-6). Here, based on the circumstances, it was not unreasonable for Lt. Miranda to restrain plaintiff by putting both of his hands on plaintiff's shoulders, guiding her to the floor, and placing her hands in handcuffs. (Tr., 36: 4-14; 123:13-25 through 129:1-5). Even assuming *arguendo*, that plaintiff did not strike Lt. Miranda in the head or repeatedly kick him, the force Lt. Miranda used to restrain her would still not be considered excessive, because Lt. Miranda was entitled to use some degree of force when

placing plaintiff under arrest. Here, Lt. Miranda used a minimal degree of force to restrain plaintiff, which is further corroborated by plaintiff's mugshot and medical records, which show little to no injuries. Accordingly, this Court should dismiss plaintiff's excessive force claim.

**C.      Lt. Miranda is Entitled to Qualified Immunity**

Qualified immunity is an immunity from suit rather than just a defense to liability. See, e.g., Lynch v. Ackley, 811 F.3d 569, 576 (2d Cir. 2016) (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009)). The application of qualified immunity is important since it is inevitable that "officials will, in some cases, reasonably but mistakenly [take actions that are later found to be illegal]; in such cases those officials . . . who act in ways they reasonably believe to be lawful, should not be held personally liable." Anderson v. Creighton, 483 U.S. 635, 641 (1987); see also Oliveira v. Mayer, 23 F.3d 642, 648 (2d Cir. 1994). Thus, the main "concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." Saucier v. Katz, 533 U.S. 194, 205 (2001). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." Id. at 202 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

To determine if a rule is clearly established, the court must ask if "officers of reasonable competence could disagree" on the legality of the officer's actions. Malley, 475 U.S. at 341; see also Brown v. City of New York, 862 F.3d 182, 190 (2d Cir. 2017) ("The issue presented, therefore, is whether, under clearly established law, *every reasonable officer* would have concluded that these actions violated [plaintiff]'s Fourth Amendment rights in the particular circumstance presented by the uncontested facts and the facts presumed in [plaintiff]'s favor." (emphasis added)). This high standard is appropriate so that the Courts do not engage in "endless second-guessing of police decisions made under stress and subject to the exigencies of the moment." Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994). "[I]n qualified immunity

cases, we are not concerned with the correctness of the defendants' conduct, but rather the 'objective reasonableness' of their chosen course of action given the circumstances confronting them at the scene." Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995); see also Leibovitz v. City of New York, 14-CV-7106 (KAM)(LB), 2018 U.S. Dist. LEXIS 34972 at *19 (E.D.N.Y. Mar. 2, 2018) ("the court may not evaluate the officer's conduct 'with 20/20 hindsight.'").

### 1. False Arrest

In the totality of the circumstances, and as discussed *supra*, the record demonstrates that, at a minimum, it was not objectively unreasonable for Lt. Miranda to believe that plaintiff committed the crime of Trespass. See New York Penal Law §140.05, (a person is guilty of trespass when she knowingly enters or remains unlawfully in or upon a premises). Plaintiff admitted that on February 4, 2013, Lt. Miranda ordered her to leave the 67th precinct and she refused. (Tr., 60:5-13). In fact, plaintiff admitted that following Lt. Miranda's clear order for her to leave the precinct, she not only failed to leave, but she remained inside the confines of the 67th precinct for at least fifteen minutes, despite his numerous orders to leave. (Tr., 60:5-22).

Plaintiff's admissions that she refused to leave the precinct and made physical contact with Lt. Miranda, provided at least arguable probable cause to arrest her based on a reasonable determination that she was trespassing and had physically assaulted Lt. Miranda. Therefore, Lt. Miranda is entitled to qualified immunity from plaintiff's false arrest claim based on the existence of arguable probable cause, and defendant's motion should be granted.

### 2. Excessive Force

In the totality of the circumstances, and as discussed *supra*, the record demonstrates that, at a minimum, the force Lt. Miranda used to restrain plaintiff on February 4, 2013 was objectively reasonable. "Officers are entitled to use some degree of force when restraining a suspect during an arrest." Faruki, 517 Fed. App'x. at 2. Based on the totality of the

circumstances, at the very least, reasonable officers could disagree as to whether the force used by Lt. Miranda, to restrain plaintiff, was not excessive. Furthermore, as discussed *supra*, plaintiff claims of excessive force are directly contradicted by plaintiff's mugshot and medical records, lending more credibility to Lt. Miranda's version of the amount of force used to place plaintiff under arrest.

In addition to the absence of any controlling precedent to suggest that any reasonable officer in Lt. Miranda's shoes would have understood that he was violating the law, the procedural history of this case also supports a finding of qualified immunity. Additionally, the eight members of the jury viewed the same evidence and failed to reach a unanimous conclusion regarding whether Lt. Miranda's actions violated plaintiff's constitutional rights. If reasonable jurors can disagree on the lawfulness of Lt. Miranda's actions, it certainly supports the conclusion that reasonable officers in his position can as well.

Therefore, given the undisputed facts in the record, plaintiff cannot demonstrate that, in the totality of circumstances, "no officer of reasonable competence could have made the same choice in similar circumstances." Lennon, 66 F.3d at 420-21. Thus, Lt. Miranda is entitled to qualified immunity from both plaintiff's false arrest and excessive force claims based on the existence of arguable probable cause, and the fact that reasonable officers could disagree on whether the force used to restrain plaintiff was reasonable, and defendant's motion should be granted.

## POINT II

### DEFENDANT SHOULD BE GRANTED A NEW TRIAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59, BECAUSE THE COURT IMPROPERLY ACCEPTED A NON-UNANIMOUS VERDICT, IN VIOLATION OF FED. R. CIV. P. 48(b)

To the extent the Court does not grant defendant's fully dispositive motion for judgment as a matter of law, or only grants it in part, defendant is entitled to a new trial on any remaining claims.  Defendant was unfairly prejudiced by the Court's ruling allowing a non-unanimous verdict, over defendant's objections.

Pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, "[t]he court may, on motion, grant a new trial on all or some of the issues – and to any party ... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a).  "A motion for a new trial, pursuant to Rule 59, may be granted when the district court is 'convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'"  Tesser v. Bd. of Educ. of City Sch. Dist. of City of N.Y., 190 F. Supp. 2d 430, 440 (E.D.N.Y. 2002) (quoting Smith v. Lightning Bolt Prods., Inc., 861 F.2d 363, 370 (2d Cir. 1988)).

Here, at plaintiff's insistence and over defendant's objections, the Court accepted a non-unanimous verdict.  (See Tr., 296:24-297:2, 297:5-11; 298:10-11).  However, this was improper pursuant to rule 48(b) of the Federal Rules of Civil Procedure, which states: "(b) Verdict. **Unless the parties stipulate otherwise, the verdict must be unanimous** and must be returned by a jury of at least 6 members."  (emphasis added).  While plaintiff's counsel referred the Court to Rule 48 when proffering that only six jurors are required to reach a verdict, (Tr., 297:19-20), he

conveniently left out the first part of the Rule which requires both parties to stipulate before a non-unanimous verdict could be accepted.

Defendant did not stipulate or agree to a non-unanimous verdict, a point that was made on the record multiple times.  (See Tr., at 297:3-4) ("[D]efendant would not consent to that."); (Tr., 297:14-15) ("It is still defendant's position that if [the jury] cannot decide it unanimously, then they should be dismissed."); (Tr., 298:8-9) ("And the defendants would object to that, Your Honor, we remain with that position.").

It has been clearly established by the United States Supreme Court that a verdict must be unanimous.  "In an unbroken line of cases reaching back into the late 1800's, the Justices of this Court have recognized, virtually without dissent, that unanimity is one of the indispensable features of *federal* jury trial." Johnson v. Louisiana, 406 U.S. 356, 369 (1972) (emphasis in original) (citations omitted).  This is also true for federal civil cases.  See Andres v. United States, 333 U.S. 740, 748 (1948) ("Unanimity in jury verdicts is required where the Sixth and Seventh Amendments apply."); see also Madden v. Hamilton Cnty. Dep't of Educ., No. 13-CV-377, 2016 U.S. Dist. LEXIS 104487, at *38 (E.D. Tenn. Aug. 9, 2016) ("A verdict must be unanimous unless the parties stipulate otherwise.");  Tigges v. AM Pizza, Inc., No. 16-10136-WGY, 2016 U.S. Dist. LEXIS 100366, at *58 n.33 (D. Mass. July 29, 2016) ("[T]his Court necessarily requires a unanimous verdict."); Grossheim v. Freightliner Corp., 974 F.2d 745, 752 (6th Cir. 1992) ("Therefore, it not being a unanimous verdict, a mistrial must of necessity be granted and the case must be retried in this particular matter.").

Defendant notes that in plaintiff's January 10, 2020 letter to the Court, counsel cites to the case of N.A.A.C.P. v. AcuSport, Inc., 271 F. Supp. 2d 435 (E.D.N.Y. 2003) in support of the contention that "contrary to Defendant's claim, non-unanimous verdicts have an important role

in a federal jury trial." See Docket No. 77. Plaintiff, however, is incorrect and is once again selectively representing the law to the Court. AcuSport was an **equitable action** (rather than a right at common law) with 68 defendants, which was being decided by the Court with the assistance of an **advisory jury**, and is governed by Fed. R. Civ. P. 39(c). See AcuSport, 271 F. Supp. 2d at 464. "The Federal Rules of Civil Procedure provide for trial by an 'advisory jury' in cases not covered by the Seventh Amendment: 'In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury ....'" Id. This case is wholly different from the situation in AcuSport, as we are dealing with the constitutional right to a jury for a common law action. For plaintiff to cite to this case in support of his claim is improper at best, and misleading at worst.

Fed. R. Civ. P. 48(b) could not be clearer – without a stipulation by both parties, the verdict had to be unanimous. Defendant did not consent to accept a non-unanimous verdict. Therefore, it was improper for plaintiff to suggest, and for the Court to accept, a non-unanimous verdict and defendant is entitled to a new trial.

## POINT III

### THE JURY'S DAMAGE AWARDS MUST BE SET ASIDE AS UNSUPPORTED OR REMITTED

If the Court does not grant judgment as a matter of law or grant the defense of qualified immunity pursuant to Rule 50, or grant a new trial pursuant to Rule 59 due to the improper acceptance of a non-unanimous verdict in violation of Rule 48(b), defendant also moves for remittitur of the damage award.

In this case, the jury awarded damages totaling $650,000. That award included total compensatory damages of $50,000 and $600,000 in punitive damages. The damages awarded are

not supported by the record and are not permissible under the law.   As a matter of law, they are excessive.  Therefore, the amount of damages must be substantially reduced.

**A.      The Jury's Compensatory Damages Award Should Be Set Aside or Reduced.**

Pursuant to Rule 59(e) of the Federal Rules, a court can grant a motion to alter or amend a judgment "to correct a clear error of law or prevent manifest injustice." Guzman v. Jay, 303 F.R.D. 186, 197 (S.D.N.Y. 2014) (quoting Munafo v. Metropolitan Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004)).  The Court has discretion to overturn a jury verdict "for excessiveness and order[] a new trial without qualification." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 165 (2d Cir. 1998) (citing Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 433(1996) (quoting Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525, 540 (1958))).  The trial court is also empowered to "enter a conditional order of remittitur, compelling a plaintiff to choose between reduction of an excessive verdict and a new trial." Kirsch, 148 F.3d at 165.  Remittitur "is the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial." Earl v. Bouchard Transp. Co., 917 F.2d 1320, 1328 (2d Cir. 1990) citing Shu-Tao Lin v. McDonnell Douglas Corp., 742 F.2d 45, 49 (2d Cir. 1984).  In calculating a remittitur of an excessive jury award, a district court should remit the jury's award to the maximum amount that would be upheld by the district as not excessive. See Earl, 917 F.2d at 1330.

The jury awarded plaintiff compensatory damages of $50,000, broken down as follows: $40,000 for false arrest, and $10,000 for excessive force.  However, these compensatory damages are not supported by the trial record, are excessive.  This is especially true because of the total absence of evidence relating to plaintiff's damages stemming from either of her claims. In the Second Circuit, "the burden is normally on the plaintiff to prove each element of a § 1983 claim, including those elements relating to damages." Miner v. City of Glens Falls. 999 F.2d 655, 660 (2d Cir. 1993).  Thus, "an award of damages must be supported by competent evidence

concerning the injury."   Carey v. Piphus, 435 U.S. 247, 264 n.20 (1978).  Here, plaintiff

presented no credible evidence that would support such a high damages award.

### 1.  False Arrest

Here, plaintiff presented no credible evidence that would support such a high damages

award for her false arrest claim.  First, plaintiff did not testify in any way about a single alleged

emotional damage related to her arrest, nor did she testify that she lost wages or any other

economic injury due to her arrest.  (See Full Tr.)  Second, plaintiff's testimony regarding alleged

physical injuries was not supported by the objective evidence and those physical injuries would

be considered in relation to her excessive force claim rather than her false arrest claim.  See

Dancy v. McGinley, 843 F.3d 93, 113 (2d Cir. 2016) (endorsing the district court's decision to

address, on remittitur, plaintiff's "excessive force and false arrest injuries separately, attributing

[plaintiff's] physical injuries to the excessive force and [plaintiff's] emotional injuries to his false

arrest, to avoid double recovery for the same injuries.").  As a result, plaintiff was only entitled

to recover for loss of liberty.

It is true that loss of liberty damages can compensate for a person's "denial of free

movement" and "harm to dignity," Alla v. Verkay, 979 F. Supp. 2d 349, 371-72 (E.D.N.Y.

2013).  Yet, plaintiff did not even put in objective evidence to show the amount of time she

spent in custody.  (See Full Tr.)  The only evidence is plaintiff's testimony elicited on cross

examination, where plaintiff confirmed she was arraigned and released a little over 24 hours after

her arrest.  (Tr., 73:13-19).  Thus, the compensatory damage award of $40,000 amounts to

plaintiff's time being worth over $1,600 an hour.  This is clearly excessive and should be set

aside.  This is particularly true here where there was arguable probable cause to arrest plaintiff,

and the false arrest claim should never have been submitted to the jury.  See, Point I, *supra*.

But, at the very least, the Court should reduce the compensatory damages award consistent with how other courts in this Circuit have done is similar cases. See, e.g., Mason v. City of New York, 949 F. Supp. 1068, 1075 (S.D.N.Y. 1996) (reducing $100,000 award to $10,000 where plaintiff did not sustain physical injuries, and did not describe emotional harm); Hallenbeck v. Albany, 99 A.D.2d 639, 640 (App. Div. 3d Dep't 1981) (reducing $25,000 damages award to $10,000 for false arrest claim and there was "no indication that he incurred any substantial physical or mental suffering."). Accordingly, the Court should set aside, or at the very least reduce, the jury's compensatory damages award for plaintiff's false arrest claim.

**2. Excessive Force**

Similarly, plaintiff's excessive force claim was not supported by any credible evidence. As discussed, *supra*, plaintiff had no objective evidence to support her alleged injuries – her medical records did not support the injuries she testified to, and although she claimed she suffered a chipped tooth, she failed to provide any dental records to support that allegation. The only evidence in the record regarding plaintiff's physical injuries is her own self-serving testimony which was not supported by the objective evidence, including plaintiff's mugshot and medical records. Therefore, for the jury to have awarded any compensatory damages for injuries plaintiff did not credibly prove should be stricken.

Nevertheless, the jury award of $10,000 in compensatory damages is still excessive and should be reduced, given verdicts returned by other juries for plaintiffs with comparable yet significantly more severe injuries. See, e.g., Goudeau v. Andrew, et al., Eastern District of Texas (verdict received July 15, 2015) (Jury awarded $1,000 in compensatory damages where plaintiff suffered a fractured finger and alleged his tooth was chipped); Curry v. Montgomery, Southern District of Florida (verdict received August 31, 2009) (Jury awarded $15,000 in compensatory

damages where plaintiff lost a tooth during use of force which had to be replaced with a dental implant); Shadd v. White, District Court of Ohio (verdict received March 12, 2011) ($10,000 compensatory award where plaintiff had two chipped teeth, a sprained shoulder, and visible bruising).

Here, as the comparisons make clear, the jury's total $50,000 award for plaintiff's claims, who suffered no provable injuries and no medical records to support her claims, is intrinsically excessive and it cannot stand.

**B.    The Jury's Award Of Punitive Damages Must Be Vacated**

The jury also awarded $600,000 in punitive damages, broken down as follows:  $200,000 for false arrest, and $400,000 for excessive force.  The award of punitive damages is intrinsically excessive, not supported by the record, and should shock the conscious of the Court.  It must be vacated.

Courts reviewing punitive damages awards must consider (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the damages awarded in comparable cases.  See BMW of N. Am. v. Gore, 517 U.S. 559, 575 (1996).  "It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003).

Here, from the disparity between the actual harm and the punitive damages award, it is clear that the jury's punitive damages award must be set aside.  See id.  The jury's award of $357,500 in punitive damages bears no "reasonable relationship between the punitive damages

award and the harm likely to result from the defendant's conduct." Milfort v. Prevete, 3 F. Supp. 3d 14, 25 (E.D.N.Y. 2014).

The jury awarded $40,000 in compensatory damages and $200,000 in punitive damages for false arrest, putting the punitive damages award at five times the compensatory damages. However, for plaintiff's excessive force claim, the jury only awarded $10,000 in compensatory damages, yet awarded $400,000 in punitive damages – forty times the compensatory damages. The jury's damages are illogical, as they awarded more punitive damages for the excessive force claim, for which they found plaintiff suffered less actual harm.

"As a general matter, the four-to-one ratio of punitive to compensatory damages awarded is 'close to the line of constitutional impropriety.'" Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 165 (2d Cir. 2014), citing State Farm Mut. Auto. Ins. Co., 538 U.S. at 425; see also Payne v. Jones, 711 F.3d 85, 103 (2d Cir. 2012) ("The ratio, without regard to the amounts, tells us little of value . . . but given the substantial amount of the compensatory award, the punitive award five times greater appears high."). Here, where the jury imposed punitive damages that were five and forty times the compensatory damages respectively, they are clearly excessive and should be vacated.

### 1. Comparison with Similar Cases

Finally, as with compensatory awards, in determining whether a punitive award is excessive, courts have found it instructive to compare it to other cases with analogous facts.

A review of cases with far more egregious conduct and actual documented injuries than those in this case, where the Court has reduced the punitive damages awards to far below the $600,000 awarded here, further supports defendant's position. For example, as to plaintiff's false arrest claim, the punitive damages award of $200,000 is far in excessive of what the Court

has previously upheld.  See, e.g., Milfort, 3 F. Supp. 3d 14 (reducing punitive damages award from $40,000 to $5,000); Theodat v. City of N.Y., 16-cv-3977 (FB)(SJB), 2019 U.S. Dist. LEXIS 157274 (E.D.N.Y. Sep. 13, 2019) (reducing punitive damage awards against two officers from $207,500 to $15,000 and from $150,000 to $5,000 respectively); Cabral v. City of New York, No. 12 Civ. 4659 (LGS), 2015 U.S. Dist. LEXIS 105392 (S.D.N.Y. Aug. 11, 2015) (reducing a punitive damages award from $110,000 to $10,000 where plaintiff prevailed on wrongful detention and unlawful search claims).

As to plaintiff's excessive force claim, the Second Circuit looked at a number of police misconduct cases and found that the Second Circuit "[has] never approved a punitive award against an individual police officer as large as … $300,000" and the Court has described "[punitive] awards ranging from $125,000 to $175,000 as 'substantial'…" Payne, 711 F.3d at 105 (collecting cases).

In Payne, the defendant officer was alleged to have punched the plaintiff seven to ten times in the face while the plaintiff was handcuffed to a hospital bed, and plaintiff's medical records confirmed that plaintiff's face was "bloody and swollen." Id.  The police department internal investigation found that the officer had brutally assaulted plaintiff and had lied to investigators about the incident, and the officer's employment was terminated as a result. Id. On these facts, the Court still found that a $300,000 punitive award was too high based on comparable cases and reduced it to $100,000.  The Court noted that "in police misconduct cases in which we sustained awards around $150,000, see, e.g., Ismail, 899 F.2d at 187, the wrongs at issue were more egregious than the misconduct of Jones." Id., citing Ismail v. Cohen, 899 F.2d 183, 187 (2d Cir. 1990).  The plaintiff in Payne suffered injuries far more extreme than plaintiff even alleged to have suffered in this case, and the Second Circuit held that $300,000 in punitive

- 23 -

damages was excessive. Here, where plaintiff suffered no documented injuries, the jury's punitive damages award is clearly excessive.

In fact, the Court has frequently reduced punitive damages for plaintiffs who suffered demonstrated physical injuries and were subjected to much more egregious conduct than plaintiff in this case. See, e.g., Theodat, 2019 U.S. Dist. LEXIS 157274, at *20-21 (Reducing punitive damage award of $207,500 force down to $15,000 where officer was found to have falsely arrested plaintiff, and twisted plaintiff's arm during the arrest, resulting in long lasting pain and physical therapy); King v. Macri, 993 F.2d 294, 296-97 (2d Cir. 1993) (Jury's punitive awards of $175,000 and $75,000 against two officers were reduced to $100,000 and $50,000 respectively, where officers strip searched the plaintiff, punched him, put him in a chokehold, held him in the courthouse for several hours, and caused him to be held at Rikers for two months); Ismail, 899 F.2d 183 (Court upheld a $150,000 punitive damages award where officer's gratuitous punches caused major injuries including broken vertebrae and ribs).

Particularly instructive is the case of DiSorbo v. Hoy, which strongly supports the view that the jury's $600,000 punitive award in this case was excessive. In DiSorbo, the plaintiff was a woman who was arrested by the defendant police officer without just cause in retaliation for having spurned his advances at a bar. See 343 F.3d at 176. At the police station, the officer slammed the plaintiff into a door, pushed her against a wall and choked her. See id. at 177. When the plaintiff tried to defend herself by kicking the officer, he responded by throwing her to the ground and striking her repeatedly. See id. The attack left bruises on the plaintiff's head, shoulder, and hands, but did not cause any permanent injuries. See id. at 179. The jury awarded punitive damages of $1.275 million, and the Second Circuit reduced the award to $75,000. See id. at 189. In reaching the reduced punitive number, the DiSorbo Court reviewed

- 24 -

its decision in <u>Lee v. Edwards</u>, 101 F.3d 805 (2d Cir. 1996), where it noted that the defendant officer struck the plaintiff, who was handcuffed, 8 or 9 times in the head with his police baton (worse than the alleged conduct in this case), to the point where plaintiff was knocked unconscious and had to be hospitalized.  <u>Id.</u>  In <u>Lee</u>, the Court reduced the $200,000 punitive damages award to $75,000.  <u>Id.</u>  Again, the Second Circuit reduced damages to an amount lower than the jury awarded here, in a case with far more egregious conduct.

Here, as the comparisons make clear, the jury's $600,000 punitive award is intrinsically excessive and cannot stand.

## CONCLUSION

For the foregoing reasons, defendant Ali Miranda respectfully requests that the

Court grant his motions in their entirety, together with such other and further relief as the Court

deems just.

Dated:  New York, New York
        February 10, 2020

<div style="margin-left:40%">

**JAMES E. JOHNSON**
Corporation Counsel of the City of New York
*Attorney for Defendant*
100 Church Street
New York, New York 10007
(212) 356-2012/5056

By:  _____
     Morgan C. McKinney, Esq.
     Erin T. Ryan, Esq.
     *Assistant Corporation Counsels*
     Special Federal Litigation Division

</div>

CC: **VIA ECF**
    Robert H. Rickner, Esq.
    Abraham Rubert-Schewel. Esq.
    *Attorneys for Plaintiff*