**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**NATASHA NATOO,**

          Plaintiff,

          vs.

**LIEUTENANT ALI**
**MIRANDA (SHIELD# 2751),**

          Defendant.

**16-CV-00502-SJ**

**MEMORANDUM OF LAW IN REPLY TO THE DEFENDANT'S**
**POST TRIAL MOTION**

LORD & SCHEWEL PLLC
233 Broadway, Suite 2220
New York, NY 10016

RICKNER PLLC
233 Broadway, Suite 2220
New York, NY 10016

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

FACTS ................................................................................................................... 1

ARGUMENT .......................................................................................................... 8

   I.   The Jury Verdict is Consistent With the Evidence ................................ 8

      A.   The Jury's False Arrest Verdict is Supported by the Evidence ...................................... 9

      B.   Jury Verdict on Excessive Force is Supported by the Evidence................................. 11

      C.   Lieutenant Miranda is Not Entitled to Qualified Immunity.......................................... 13

   II.   The Defendant Waived any Objection and Stipulated to a Non-Unanimous Jury Verdict 16

   III.   The Jury's Damages Awards are Appropriate and Should be Upheld ............................ 18

      A.   Compensatory Damages ................................................................. 19

      B.   The Jury's Punitive Damages Award is Appropriate .................................................... 21

CONCLUSION....................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Mesa v. City of New York*, No. 09–CV–10464, 2013 WL 31002, at *18 (S.D.N.Y. Jan. 3, 2013) .. 14

*Adedeji v. Hoder*, 935 F. Supp. 2d 557, 570-71 (E.D.N.Y. 2013)................................................... 16

*Alla v. Verkay*, 979 F. Supp. 2d 349, 373–74 (E.D.N.Y. 2013)........................................................ 22

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123–24 (2d Cir. 2004) ........................... 13, 14

*B.M.W. of North America v. Gore*, 517 U.S. 559 (1996)................................................................. 22

*Carpenter v. City of New York*, 984 F. Supp. 2d 255, 265 (S.D.N.Y. 2013)................................... 11

*Davenport v. County of Suffolk*, No. 99–CV–3088, 2007 WL 608125, at *11 (E.D.N.Y. Feb. 23, 2007) ............................................................................................................................................. 14

*DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003)......................................................................... 19

*Fink v. City of New York*, 129 F.Supp.2d 511, 531 (E.D.N.Y. 2001)............................................... 19

*Gardner v. Federated Dept. Stores*, Inc., 907 F.2d 1348, 1353 (2d Cir.1990)............................... 19

*Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) ............................................... 12

*Hayes v. N.Y.C. Police Dep't*, 212 Fed. Appx. 60, 62 (2d Cir. 2007)............................................... 14

*Hightower v. Nassau Cty. Sheriff's Dep't*, 325 F. Supp. 2d 199, 207–09 (E.D.N.Y.) ...................... 21

*Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir.1990) ......................................................................... 20

*Jackson v. Tellado*, 236 F. Supp. 3d 636, 671 n.33 (E.D.N.Y. 2017) ............................................. 17

*Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 535 (1999) ................................................................. 16

*Lemmo v. City of New York*, No. 08–CV–2641, 2011 WL 4592785, at *8 (E.D.N.Y. Sept. 30, 2011) ............................................................................................................................................. 14

*Lewis v. City of Albany Police Dep't*, 547 F.Supp.2d 191, 206–10 (N.D.N.Y. 2008)...................... 21

*Long v. Bristol Twp.*, No. CIV.A. 10-1069, 2012 WL 2864410, at *21 (E.D. Pa. 2012)................. 16

*Lore v. City of Syracuse*, 670 F.3d 127, 177 (2d Cir. 2012) ............................................................ 20

*Malley v. Briggs*, 475 U.S. 335, 341 (1986) ................................................................................ 16

*Martinez v. Gayson*, No. 95–CV–3788, 1998 WL 564385 (E.D.N.Y. June 30, 1998) .................. 21

*Martinez v. The Port Authority of New York and New Jersey*, 445 F.3d 158, 161 (2d Cir. 2006) ... 20

*Milfort v. Prevete*, 3 F. Supp. 3d 14, 22-23 (E.D.N.Y. 2014) ......................................................... 16

*Morales v. City of New York*, No. 99 Civ. 10004 (DLC), 2001 WL 8594, 10 (S.D.N.Y. Jan. 2, 2001) ................................................................................................................................................ 21

*O.K. Sand & Gravel, Inc. v. Martin Marietta Techs., Inc.,* 36 F.3d 565, 568 (7th Cir. 1994) ......... 19

*Payne v. Jones,* 711 F.3d 85, 103 (2d Cir. 2013) ............................................................................ 23

*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) ................................................ 15

*Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 873 (E.D. Pa. 2000) ............................................ 16

*Thompson v. Clark*, No. 14-CV-7349, 2018 WL 3128975, at *7 (E.D.N.Y. June 26, 2018) .......... 17

*United States v. Quinones*, 511 F.3d 289, 321 (2d Cir. 2007) ....................................................... 18

*United States v. Young*, 745 F.2d 733, 752 (2d Cir. 1984) ........................................................... 19

*Weather v. City of Mount Vernon*, 2011 WL 1046165, *11 (S.D.N.Y. 2011) ................................ 13

*Wiercinski v. Mangia 57, Inc.,* 787 F.3d 106, 112 (2d Cir. 2015) ................................................. 10

*Yang Feng Zhao v. City of New York*, 656 F.Supp.2d 375, 390 (S.D.N.Y. 2009) ............................ 14

**Statutes**

Federal Rule of Civil Procedure 48 .................................................................................... 4, 9, 17

## PRELIMINARY STATEMENT

On February 4, 2013, Natasha Natoo ("Plaintiff" or "Ms. Natoo") was transported by New York Police Department Officers to the 67th Precinct to pick up her 14-year old son.  While waiting in the precinct Ms. Natoo was falsely arrested, assaulted, and the victim of excessive force by Lieutenant Ali Miranda ("Defendant" or "Lieutenant Miranda").  Lieutenant Miranda then intentionally fabricated evidence, claiming he was hit in the head by Ms. Natoo's backpack, in an effort to have Ms. Natoo charged with assault.  The jury rejected Miranda's fabrication, found him liable for false arrest and excessive force and awarded Ms. Natoo $650,000 in damages.  This Court should sustain this verdict and reject Defendant's motion for judgment as a matter of law, a new trial, or for remittitur pursuant to Rule 50.

The Court should also reject Defendant's motion for a new trial under Rule 59.  Because defense counsel endorsed the Court's Rule 48 instruction on a non-unanimous jury, it waived any right to review the Court's charge.  Furthermore, defense counsel stipulated to a non-unanimous jury.  Thus, this verdict must be sustained.

## FACTS

On January 7, 2020, a jury trial commenced in this matter.  Natasha Natoo alleged claims under 42 U.S.C. § 1983 of excessive force and false arrest against Lieutenant Miranda.  The jury, after a day of testimony, was given the case on January 8, 2020.  On the morning of January 9, 2020, the jury indicated in a note that there was one holdout and they could not come to a unanimous verdict.  The parties, pursuant to Federal Rule of Civil Procedure 48, then stipulated to non-unanimous jury verdict.  Shortly after, the jury returned a verdict finding Lieutenant Miranda liable for false arrest and excessive force.  The jury awarded Ms. Natoo $650,000 in

1

damages: for false arrest $40,000 in compensatory damages and $200,000 in punitive damages, and for excessive force $10,000 in compensatory damages and $400,000 in punitive damages.

**Natasha Natoo's Testimony and Medical Records**

On February 4, 2013, Ms. Natoo learned that her 14-year-old son, Arel Joseph, had been arrested.  Trial Tr. at 29:24-30:5.  She immediately went to the 67th precinct in Flatbush, Brooklyn, to figure out what had happened to her son, to see if he was injured, and if he would be released.[1]  *Id.* at 30:4-25.

Ms. Natoo arrived at the 67th precinct at approximately 2 p.m. and sat in the waiting area. *Id.*  Officer Elias, at 3 p.m., entered the waiting room and handed Ms. Natoo her son's backpack. *Id.*  Arel's backpack had school books inside of it.  *Id.*  Ms. Natoo asked Officer Elias what had happened to her son, but he refused to tell her.  *Id.*

Ms. Natoo waited in the precinct for another hour until Lieutenant Miranda entered the waiting area.  *Id.* at 37:3-9.  Lieutenant Miranda pushed Ms. Natoo and told her to "get out."  *Id.* Ms. Natoo walked out of the waiting room to the front of the precinct.  *Id.* at 37:11-14*; see also* Plaintiff's Ex. 6A.  Lieutenant Miranda then charged at Ms. Natoo.  Trial Tr. at 39:24-25.  She tried to turn to face him and Miranda slammed into the back of her shoulder.  Trial Tr. at 39:24-40:6.  Lieutenant Miranda then took Ms. Natoo to the ground, pushed her face into the floor, and "bent his knee" into her back.  *Id.* at 40:4-8.  Lieutenant Miranda handcuffed Ms. Natoo's hands and feet and dragged her across the floor of waiting room and into a cell inside the precinct.  *Id.*

---

[1] Because Arel Joseph was a minor, and was injured during his arrest, NYPD officers came to Ms. Natoo's home and escorted her to King's County Hospital to be with her son.  She then was taken by NYPD officers to the 67th precinct.  This portion of her testimony was precluded at trial.

at 40:9-25.  Ms. Natoo was then searched by two unidentified NYPD officers in the cell.  *Id.* at 41.  One of the officers pulled her hair back and pushed her head into the cell wall.  *Id.*

Ms. Natoo had never been in a jail cell or handcuffed prior to this incident.  *Id.* 40:13-14; 42:10-11.  Shortly after being placed in the cell, officers at the 67th precinct requested medical attention for Ms. Natoo.  *Id.* at 42.  Paramedics arrived and transferred her to Methodist Hospital.  *Id.* at 43:1-3.  She reported to hospital staff that she was injured all over her: "[m]y back. My wrists. My ankles. My chest. My head."  *Id.* at 43:17-19.

The medical records from Methodist Hospital, support this account.  *See* Defendant's Exhibit B, February 4, 2013 and March 6, 2013 medical records ("Def's Ex. B").  Hospital staff diagnosed Ms. Natoo as a "victim of assault" with wrist abrasions, and reported injuries to "head, chest, back, abdomen."  Def's Ex. B, at 1,4.

At approximately 2 a.m. Ms. Natoo was brought from the Hospital back to the 67th precinct and placed in a cell.  Trial Tr. at 44:16-23.  The next morning, February 5, 2013, Ms. Natoo was transferred to central bookings where she was arraigned and released from custody around 8 p.m.  *Id.* at 45:14-18.  All criminal charges brought against her were dismissed.  *Id.*

After her release, Ms. Natoo returned home but still was unable to locate her son.  *Id.* She called the 67th precinct to determine if he was still there, but was told not to call the precinct again.  *Id.*  The next day, February 6, 2020, Arel Joseph was released and returned home.  *Id.*

Ms. Natoo testified that this incident caused her long term physical and emotional injury. *Id.* at 46:12-15.  And that she still "feel[s] awful" from that day.  *Id.*

3

**Lieutenant Miranda's Testimony**

Lieutenant Miranda testified that in 2013, at the time of this incident, he was a Sergeant with the NYPD.  *Id.* at 83.  He was stationed at the 67th precinct.  *Id.* at 87.  He testified that in 2013 the 67th precinct had no surveillance cameras.  *Id.* at 89:6-15.

Lieutenant Miranda testified that on February 4, 2013, he was stationed as the desk duty officer.  *Id.* at 91.  As the desk duty officer, he had very specific responsibilities such as: supervising officers at the precinct, supervising all arrest processing, making sure all property is vouchered, questioning officers about circumstances of arrest, inquiring into use of force during an arrest, and interviewing visitors entering the command precinct.  *Id.* at 91:1-16.

On February 4, 2013, Miranda started his tour as desk duty officer at 2 p.m.  *Id.* at 92:1-3.  He claimed that around 4 p.m. he heard some yelling but did not take any action because another officer was in the waiting area.  *Id.* at 92:5-16.  Officer Miranda then entered the waiting room and asked if he could assist Ms. Natoo.  *Id.* at 93:16-18.

Lieutenant Miranda testified that prior to Ms. Natoo's arrest, he did not know why she was present at the precinct, or that her son had been arrested and was being held.  *Id.*  He testified that he knew a juvenile was present at the precinct, but initially claimed he had no interaction with him.  *Id.*  Thus, he claimed that he had no idea why Ms. Natoo was at the precinct and did not inform her what the process would be for her son and when he would be released.  *Id.* at 93:16-25; 96:22-25.

Lieutenant Miranda later testified, however, that he had signed a medical treatment of prisoner form for Arel Joseph at approximately 2:15 p.m. on the date of the incident.  *Id.* at 98.  He claimed that he would never sign a medical treatment of prisoner form without at least seeing the prisoner, so he must have seen Arel Joseph on the date of the incident prior to Ms. Natoo's

4

arrest. *Id.* at 99:13-25. He also testified that he would have made sure that the parents of any juvenile in his custody had been contacted. *Id.* at 100:1-7.

Lieutenant Miranda testified that he instructed Ms. Natoo to leave the waiting room. *Id.* Ms. Natoo walked out of the waiting room and "momentarily" stood by the door of the precinct. *Id.* at 101:1-15. Miranda testified that Ms. Natoo made an attempt to leave the precinct. *Id.* at 142. Lieutenant Miranda claimed that he then walked towards Ms. Natoo, and that she turned and struck him in the head with her son's back pack, causing the strings to get tangled around his neck. *Id.* at 102:17-25. He testified that he did not actually see Ms. Natoo swing the back pack at him, because he "momentarily looked away." *Id.* at 104:8-13.

Lieutenant Miranda testified that at this point he decided to arrest Ms. Natoo. *Id.* at 105. He handcuffed her and took her to the ground. *Id.*

**Officer William Elias's Testimony**

Because Officer Elias was unavailable at trial, the parties consented to reading the transcript of his deposition testimony. *Id.* at 148. Officer Elias testified that he had arrested Arel Joseph and it was his responsibility to speak to the parent of anyone he has arrested. *Id.* at 152;10-20. He returned Arel's backpack to Ms. Natoo at approximately 3:40 p.m. *Id.* at 150:6-11. Officer Elias was assigned the arrest of Ms. Natoo based on information supplied by Lieutenant Miranda. *Id.* at 156. Officer Elias did not witness any of the alleged incidents that were the basis for the arrest:

> Q But my question is, did you observe Ms. Natoo obstruct governmental administration?
>
> A No.

Q Did you observe Ms. Natoo assault anyone with the intent to cause physical injury?

A No.

Q Did you observe Ms. Natoo resist arrest by any officer?

A No.

Q Did you observe Ms. Natoo harass anyone?

A No.

Q Whether it's in the second degree to cause physical contact or not, did you observe any of that?

A No.

Q Did you observe any disorderly conduct by Ms. Natoo, whether a violent behavior?

A I did not visually observe, no.

Q What is the top charge against Ms. Natoo?

A Obstructing government administration.

Q Did you know specifically what Government administration Ms. Natoo obstructed that resulted in that charge?

A Yes.

Q What was the Government administration that was obstructed?

A Well, I was informed that Sergeant Miranda did state that the complainant needs to lower her voice.

Q Where are you getting that information?

6

A That was information I was given to by Sergeant Miranda at the time of the

arrest.

*Id.* at 156:11-157:13.

**Jury Deliberation, Stipulation to Non-Unanimous Jury, and Verdict**

On the afternoon of January 8, 2020, the eight-member jury commenced deliberations.

*Id.* at 279.  At 6:45 p.m. that night, the jury sent a note stating it was "unable to come to a

unanimous decision after careful discussion, and are unsure how to proceed."  *Id.* at 283:1-10.

The Court dismissed the jury to return the next day to continue their deliberations.  *Id.*

On January 9, 2020, the jury returned to deliberate and indicated again it was unable to

come to a unanimous decision.  *Id.* at 287.  In response to this note, the Court read the jury an

Allen charge and asked them to continue their deliberations through lunch.  *Id.* at 293-295.

At 1:40 p.m. the jury sent a note stating: "There is one individual who stands firm on

their position on both charges.  This individual claims that no further discussion (of the evidence)

can change their mind. The juror's firm standing is causing an inevitable deadlock."  *Id.* at

300:12-19.

Plaintiff requested that the Court take a non-unanimous verdict.  *Id.* at 296:18-25.

Defendant, initially, refused to consent to a non-unanimous verdict.  *Id.* at 297.  However, after

continued discussion, Defendant's counsel changed its position and stipulated to a non-

unanimous verdict.  *Id.* at 298.

MS. McKINNEY: Well, Your Honor, if there is one holdout, then defendants

would request that the other seven would need to be unanimous in their decision.

MR. RICKNER: Of course.

THE COURT: We want a unanimous decision.

7

MR. RUBERT-SCHEWEL: Of seven jurors.

MS. McKINNEY: Of seven jurors.

THE COURT: Of seven jurors.

MS. McKINNEY: Yes, Your Honor.

*Id.* at 298:21-299:6.

The jury returned to the courtroom and the Court instructed the jury, pursuant to Federal Rule of Civil Procedure 48, that it could return a decision by at least six jurors. *Id.* at 299:7-25. Defendant did not object to this instruction after it was read. *Id.*

Soon after, the jury returned a non-unanimous verdict with six jurors finding Lieutenant Miranda liable for false arrest and excessive force. *Id.* at 302. The jury awarded Ms. Natoo $40,000 in compensatory damages and $200,000 in punitive damages for the false arrest. *Id.* For the excessive force, the jury awarded $10,000 in compensatory damages and $400,000 in punitive damages. *Id.* at 303.

## ARGUMENT

### I.    The Jury Verdict is Consistent With the Evidence

Defendant's motion for a directed verdict should be denied. A court may only grant a Rule 50(b) motion if there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it]." *Wiercinski v. Mangia 57, Inc.,* 787 F.3d 106, 112 (2d Cir. 2015). As the Second Circuit has instructed:

> The motion should be granted only if the court can conclude that, with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable juror would have been compelled to accept the view

8

of the moving party. The court cannot assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury.

*Id.* at 112-113 (citation omitted).

Here, as discussed below, the evidence, especially when viewed in the light most favorable to Plaintiff, was more than sufficient to support the jury's verdict.

### A. The Jury's False Arrest Verdict is Supported by the Evidence

At trial, the Defendant argued he had probable cause to arrest Plaintiff for six different criminal offenses.  The jury rejected all six claims of probable cause and found the Defendant liable.  Now, Defendant argues he is entitled to judgment as a matter of law because he had probable cause to arrest Ms. Natoo for trespass.  This argument again fails, because when viewed in the light most favorable to Plaintiff, Defendant cannot show that (1) Ms. Natoo defied his order to leave the waiting area, or (2) that the order to exclude Plaintiff was lawful.  *See Carpenter v. City of New York*, 984 F. Supp. 2d 255, 265 (S.D.N.Y. 2013) (Defendant "has the burden of proving three elements to support a prima facie case of criminal trespass: (1) that a lawful order excluding the defendant from the premises was issued, (2) that the order was communicated to the defendant by a person with authority to make the order, and (3) that the defendant defied that order.").

First, the evidence clearly shows that Ms. Natoo complied with Lieutenant Miranda's order for her to leave the *waiting area*.  In fact, Ms. Natoo walked out of the *waiting area* and all the way to the door of the precinct after Miranda's order.

Q [] At some point after coming out to greet Ms. Natoo you instructed her to leave the waiting room?

A That's correct.

Q Eventually she walked out of the waiting room, right?

9

A Yes.

Q And through the first door.

A Yes. []

Q And she stood at the door to the exit to the precinct?

A Yes . . .

Q She was about a foot away from the door, right?

A About, yes.

Trial Tr. at 100:8-25.

A more than reasonable reading of the testimony shows that Ms. Natoo immediately

complied with Miranda's order to leave the *waiting area.*  Defendant argues Plaintiff was

ordered to leave the precinct, not just the waiting area.  This is conflicting evidence which is

insufficient to overturn a jury verdict.

Additionally, Lieutenant Miranda also testified that Ms. Natoo attempted to leave the

precinct before she was arrested.

Q: Sure. At some point in time you told her to leave the premises; is that correct?

A: Correct.

Q: Did she make any attempt to leave the premises before you were struck by the

book bag?

A: Yes.

Trial Tr. at 142: 3-8.  So, measured from Lieutenant Miranda's perspective, Ms. Natoo did

attempt to leave.  This is crucial because probable cause is determined from facts known to the

arresting officer.  Thus, the Defendant's statement that Plaintiff had tried to leave the precinct is

sufficient to defeat a claim of trespass. *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d

Cir. 2013) (The inquiry is limited to "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest.").  Simply, the evidence more than supports a finding that Ms. Natoo complied with Miranda's order and defeats a claim of trespass on this basis alone.

Second, a reasonable juror could have found, and Plaintiff argued at trial, that Lieutenant Miranda's order for Ms. Natoo to leave the waiting area was unlawful.  Ms. Natoo arrived at the precinct to pick up her 14-year old son, to determine when he would be released, or to be present at any interrogation.  Lieutenant Miranda initially claimed he did not know why she was present but then admitted he had signed a medical treatment of prisoner form for her son and would have contacted Ms. Natoo to notify her that her son was arrested and so she could pick him up.  *See* Trial Tr. at 98-100.  Ms. Natoo, at the time she was ordered to leave, had received Arel's backpack, but was still waiting for her son to be released or any word on what was happening to him.  Thus, the evidence supports a jury finding that Ms. Natoo was entitled to be present and that Miranda's order for her to leave the waiting area was unlawful.

### B.  Jury Verdict on Excessive Force is Supported by the Evidence

When Lieutenant Miranda slammed into the back of Ms. Natoo, took her to the ground, pushed her face into the floor, "bent his knee" into her back, and then dragged her across the floor of the waiting room and into a cell in the precinct, he undoubtedly committed excessive force.  *Weather v. City of Mount Vernon,* 2011 WL 1046165, *11 (S.D.N.Y. 2011), *aff'd,* 474 Fed. Appx. 821 (2d Cir.2012) ("Under the law, police are not permitted to use any degree of force in all instances—in some circumstances, no use of force is reasonable because none is required.").

11

Because the jury found in favor of Ms. Natoo on her false arrest claim, they clearly believed that there was no probable cause to arrest or handcuff her and that she was non-violent. *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 123–24 (2d Cir. 2004) (distinguishing the kind of force that can be used in "the arrest of a nonviolent suspect"). In fact, this Court instructed the jury that it should take into account whether her arrest was valid:

> when you consider plaintiff's claim that she was subjected to excessive force during the arrest, you will have already determined whether or not plaintiff committed one or more crimes in the 67th precinct on February 4, 2013. That determination should guide your deliberation of whether the force applied was excessive or not. In other words, if you credit plaintiff's version of the events, less force would be required to take her into custody than if you credit defendant's version of events.

Trial Tr. 265:7-16. Thus, as instructed by the Court, because the jury found Ms. Natoo was falsely arrested, it was certainly reasonable to determine that the force used by Lieutenant Miranda was excessive.

Defendant also claims that Plaintiff's alleged injuries are insufficient to support an excessive force claim. This argument is belied by Ms. Natoo's testimony and her medical records. Staff at Methodist Hospital diagnosed Ms. Natoo as a "victim of assault" with wrist abrasions, and reported injuries to "head, chest, back, abdomen." Def's Ex. B, at 1,4. This alleged injury is more than sufficient in the Second Circuit to support an excessive force claim. *Yang Feng Zhao v. City of New York,* 656 F.Supp.2d 375, 390 (S.D.N.Y. 2009) ("[T]he Second [C]ircuit has indicated that a very minimal injury is sufficient to trigger potential liability [for excessive force]"); *Hayes v. N.Y.C. Police Dep't,* 212 Fed. Appx. 60, 62 (2d Cir. 2007) ("[W]e have permitted claims to survive summary judgment where the only injury alleged is bruising."); *Hayes v. County of Sullivan,* 853 F. Supp. 2d 400, 432 (S.D.N.Y. 2012) ("Plaintiff need not show permanent or severe injuries to maintain an excessive force claim."); *Lemmo v.*

12

*City of New York,* No. 08–CV–2641, 2011 WL 4592785, at *8 (E.D.N.Y. Sept. 30, 2011) (noting that "a jury may consider the lack of serious injury as evidence that the implemented force was not excessive;" however, a reasonable jury could still find that any use of force under the circumstances were inappropriate); *Davenport v. County of Suffolk,* No. 99–CV–3088, 2007 WL 608125, at *11 (E.D.N.Y. Feb. 23, 2007) (holding that use of force that causes *de minimis* injury could be excessive force if "gratuitous"); *Mesa v. City of New York,* No. 09–CV–10464, 2013 WL 31002, at *18 (S.D.N.Y. Jan. 3, 2013) (noting that "sustained injury that requires doctors' visits is not a necessary element of a successful excessive force claim"). The Second Circuit has found that forcibly removing a non-violent arrestee from his or her car can be the basis of an excessive force claim. *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 123–24 (2d Cir. 2004) (noting that the Second Circuit has found that "allegations that police yanked arrestee out of a car, threw her against it, and pinned her arm behind her back were sufficient to withstand summary judgment" (citing *Robison v. Via,* 821 F.2d 913, 923–24 (2d Cir.1987))).

### C. Lieutenant Miranda is Not Entitled to Qualified Immunity

The jury found that Lieutenant Miranda lied when he claimed that Natasha Natoo hit him in the head with a backpack. This type of fabrication—falsifying evidence to charge Ms. Natoo with assault—has long been held by the Second Circuit to be such an obvious violation of a Plaintiff's constitutional rights that any officer anywhere in the country must know it is wrong. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997). The alleged swing of the book bag is what Ms. Natoo was accused of and arrested for; but Miranda's fabricated claim was swiftly rejected by the jury. Lieutenant Miranda did not make a "reasonable mistake" but fabricated evidence in an attempt to justify his unconstitutional arrest and use of excessive force.

Now, the Defendant seeks to claim it would have been "objectively reasonable" for Lieutenant Miranda to arrest Ms. Natoo for trespass.[2]  This claim also fails.  Lieutenant Miranda's own testimony states that he ordered Ms. Natoo out of the "waiting area" and that she complied with this order and went and stood by the door of the precinct.  Never did Lieutenant Miranda testify that he ordered Ms. Natoo out of the precinct.  Importantly, the door of the precinct and vestibule is clearly outside of the waiting area as shown in Plaintiff's Exhibit 6A.  Additionally, Miranda testified that Ms. Natoo made an attempt to leave the precinct before she was arrested.  A reasonable interpretation of the evidence supports the jury's finding that Ms. Natoo complied with Miranda's order.

The application of qualified immunity to the record in this case would also be problematic in light of the jury's award of punitive damages.  Consistent with the statutory mandate of § 1983, the jury in this case was specifically instructed that it could award punitive damages if it found either that Lieutenant Miranda acted "maliciously," i.e., "prompted by ill will or spite towards" Ms. Natoo, or that Miranda acted "wantonly," i.e., in "reckless or call[o]us disregard for the rights of" Ms. Natoo.  Trial Tr. at 272:7-22.  The requirement of malice or recklessness in awarding punitive damages "pertain[s] to the [defendant's] knowledge that it may be acting in violation of federal law, not its awareness [of its particular acts against the plaintiff]." *Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 535 (1999).  The jury's finding that Miranda should be held liable for punitive damages is thus a finding that he acted with malice or—at the very least—recklessly toward Ms. Natoo's legal rights.  This determination is at odds with qualified immunity, which does not protect "the plainly incompetent or those who

---

[2] Ms. Natoo was never charged criminally with trespass. *See* Ex. A, Criminal Court Complaint.

knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Indeed, insofar as the jury awarded punitive damages after finding Miranda had "reckless . . . disregard" for Ms. Natoo's constitutional rights, it would be somewhat—if not directly— paradoxical to conclude that Miranda did not violate "constitutional rights of which a reasonable person would have known." *Tracy*, 623 F.3d at 95-96 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Thus, as several courts have recognized, "the jury's determination that punitive damages were appropriate . . . makes [an officer's] assertion of qualified immunity 'seem especially hollow'" and "difficult to reconcile" with an officer's "after-the-fact assertion that his actions were nevertheless objectively reasonable." *Adedeji v. Hoder*, 935 F. Supp. 2d 557, 570-71 (E.D.N.Y. 2013); *see also Long v. Bristol Twp.*, No. CIV.A. 10-1069, 2012 WL 2864410, at *21 (E.D. Pa. 2012) ("The objective standard of 'callous or reckless indifference' that suffices for an award of punitive damages is not far removed from the standard for denying qualified immunity to the officers—whether a reasonable officer would have known that his conduct violated a clearly established constitutional right."); *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 873 (E.D. Pa. 2000); *Milfort v. Prevete*, 3 F. Supp. 3d 14, 22-23 (E.D.N.Y. 2014) (jury's award of punitive damages "provides still further reason to deny the Defendant's claim for qualified immunity"); *Jackson v. Tellado*, 236 F. Supp. 3d 636, 671 n.33 (E.D.N.Y. 2017) (jury's award of punitive damages "reinforces the Court's denial of qualified immunity on [an] excessive force claim").

Defendant's claim of qualified immunity for the excessive force claim is similarly based on the lie that Ms. Natoo hit Miranda with a book bag. The theory of criminal assault was put before the jury and rejected. After rejecting Miranda's false testimony, the jury found no probable cause for any other claim. And the jury endorsed, as is evident by their award of

punitive damages, Ms. Natoo's testimony that Miranda slammed into her, took her violently to the ground, and dragged her across the precinct floor.

This is not a case where an officer made a reasonable mistake; but one where he intentionally fabricated evidence in order to justify his unconstitutional arrest and use of excessive force. Thus, qualified immunity must be denied. *Thompson v. Clark*, No. 14-CV-7349, 2018 WL 3128975, at *7 (E.D.N.Y. June 26, 2018) (denying qualified immunity where Court found a jury question of whether officers acted intentionally to violate Plaintiff's rights).

## II.    The Defendant Waived any Objection and Stipulated to a Non-Unanimous Jury Verdict

The Defendant endorsed the Court's Rule 48 jury instruction, stipulated to a non-unanimous verdict, and waived any review of this issue. Under Rule 48(b), there are two requirements: "[1] the verdict must be unanimous and [2] must be returned by a jury of at least 6 members." But the unanimity requirement can be waived if "the parties stipulate otherwise." *Id*. Here, the parties stipulated to a non-unanimous verdict, and the jury verdict was returned by six members.

In response to a jury note stating there was a single holdout, the parties discussed stipulating to a non-unanimous jury pursuant to Federal Rule of Civil Procedure 48(b), and defense counsel initially objected. The discussion continued, and the Court refocused the parties on what the jury note said:

> THE COURT: We've been mentioning the term six, what they said is one holdout so it would be seven.

> MS. McKINNEY: That was our understanding.

> THE COURT: It will take at least six.

16

Trial Tr. at 298.  At this point, the Defendant reversed its position, endorsed the Court's charge, and consented to a non-unanimous jury verdict:

> MS. McKINNEY: Well, Your Honor, if there is one holdout, then defendants would request that the other seven would need to be unanimous in their decision.
>
> MR. RICKNER: Of course.
>
> THE COURT: We want a unanimous decision.
>
> MR. RUBERT-SCHEWEL: Of seven jurors.
>
> MS. McKINNEY: Of seven jurors.
>
> THE COURT: Of seven jurors.
>
> MS. McKINNEY: Yes, Your Honor.

*Id.* at 298-99.

A plain reading of defense counsel's words to the Court is that Defendant changed course, withdrew the objection, and stipulated to a non-unanimous jury. *Williams v. Nashville Network,* 132 F.3d 1123, 1128 (6th Cir. 1997) ("the Federal Rules of Civil Procedure explicitly provide that parties may stipulate to a non-unanimous verdict. Fed. R. Civ. P. 48.  Further, a jury of as few as six members is presumptively acceptable.").  By requesting that "the other seven [] be unanimous in their decision," the Defendant agreed that it would accept a verdict from seven of the eight jurors present; thus stipulating to a non-unanimous verdict. *See Williams*, 132 F.3d at 1128 (finding that plaintiff forfeited his right to a unanimous verdict when they agreed to proceed with a "majority verdict").

Furthermore, the Court need not even reach the merits of the Rule 48 issue.  Because Defendant endorsed the Court's proposed charge, he has waived any prior objection, and any right to review the non-unanimous jury charge. *See Ruocco v. Hemmerdinger Corp.*, 711 F.

17

App'x 659, 663 (2d Cir. 2017) ("Further, endorsement [of a jury charge] might well be deemed a true waiver, negating even plain error review."); s*ee generally United States v. Quinones,* 511 F.3d 289, 321 (2d Cir. 2007) (discussing "true waiver" concept.  As the Second Circuit observed in *United States v. Giovanelli,* a defendant who has "invited" a challenged charge "has waived any right to appellate review."  464 F.3d 346, 351 (2d Cir. 2006); *United States v. Young,* 745 F.2d 733, 752 (2d Cir. 1984) (holding that "not even the plain error doctrine permits reversal on the ground that the trial court granted a defendant's request to charge").  By endorsing the charge, and then failing to object before the jury retired, the Defendant waived any review of the Court's instruction.  *See e.g., O.K. Sand & Gravel, Inc. v. Martin Marietta Techs., Inc.,* 36 F.3d 565, 568 (7th Cir. 1994) ("Clearly, O.K. Sand had the last word, and the word was not "object." Having failed to make "a clear statement of the specific grounds for objection [] O.K. Sand has waived its claim of error.").

Following the discussion on the non-unanimous jury, the jury reentered the courtroom and the Court gave this additional instruction:

> I'm going to ask you to, if there's at least a unanimous decision by
> at least six or if there is seven, can you go in there and come back
> with a unanimous decision by at least six of you.

*Id*. at 299.  Defendant did not object at this point, or after the jury retired to deliberate.  The jury then returned with a unanimous verdict by six jurors.  *Id*. at 301.  Thus, there are no grounds to reverse course, order a mistrial, and force Plaintiff to try her case again.

## III.    The Jury's Damages Awards are Appropriate and Should be Upheld

The district court's role, when reviewing damages, is limited to determining "whether the award is so high as to shock the judicial conscience and constitute a denial of justice."  *DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003) (quoting *Mathie v. Fries*, 121 F.3d 808, 813 (2d Cir. 1997)).  Courts "are constrained to give due deference to the fact-finding role of the jury when

reviewing a claim of excessive damages." *Gardner v. Federated Dept. Stores, Inc.,* 907 F.2d 1348, 1353 (2d Cir.1990).  "A jury verdict is excessive [only if] it is so high that it shocks the conscience of the court." *Fink v. City of New York,* 129 F.Supp.2d 511, 531 (E.D.N.Y. 2001) (citing *Lee v. Edwards,* 101 F.3d 805, 808 (2d Cir. 1996)).

### A.  Compensatory Damages

Plaintiff's compensatory damages awards of $40,000 for false arrest and $10,000 for excessive force are entirely appropriate under the facts at issue, consistent with the law of this Circuit, and should be upheld.  The "calculation of damages is the province of the jury," *Ismail v. Cohen,* 899 F.2d 183, 186 (2d Cir.1990), and the Second Circuit "will not 'vacate or reduce a jury award merely because [it] would have granted a lesser amount of damages,'" *Lore v. City of Syracuse,* 670 F.3d 127, 177 (2d Cir. 2012) (quoting *Nairn v. Nat'l R.R. Passenger Corp.,* 837 F.2d 565, 566–67 (2d Cir.1988)).

Because of Lieutenant Miranda's false arrest, Ms. Natoo was in custody for 27 hours, roughly strip searched, and transported to the hospital for treatment for her emotional and physical injuries related to her arrest.  Trial Tr. at 45.  Thus, for her false arrest claim, she is entitled to two types of compensatory damages: (1) for loss of liberty and (2) for physical and emotional distress.  *See Martinez v. The Port Authority of New York and New Jersey,* 445 F.3d 158, 161 (2d Cir. 2006); *Kerman v. City of New York,* 374 F.3d 93, 125 (2d Cir. 2004); *see also Kerman,* 374 F.3d at 125–26 (holding that, even without other injuries, "an award of several thousand dollars may be appropriate simply for several hours' loss of liberty").

An award of $40,000 is well within the reasonable range of compensatory damages for 27 hours in custody and the physical and emotional suffering Ms. Natoo endured.  *See, e.g., Martinez v. Port Auth. of N.Y. & N.J.*, 445 F.3d 158, 160 (2d Cir. 2006) (affirming a

19

$360,000 compensatory award for a false arrest claim where the plaintiff was in custody for 19 hours, had not been physically assaulted, but had experienced emotional distress such as sleeplessness and anxiety); *Graham*, 128 F. Supp. 3d at 715 (affirming jury's compensatory award of $150,000 for his false arrest claim where the plaintiff had combined injuries including approximately one hour of lost liberty, some minor physical pain and injury, and past and future emotional harm, including fear, panic and humiliation); *Martinez v. Gayson*, No. 95–CV–3788, 1998 WL 564385 (E.D.N.Y. June 30, 1998) (awarding $160,000 for false arrest and malicious prosecution claims when the plaintiff was arrested at work and detained for approximately five hours, suffered humiliation but no physical injuries, and was tried on subsequent criminal charges and acquitted).

Ms. Natoo's excessive force award of $10,000, is similarly appropriate for the injury she suffered when Lieutenant Miranda slammed into her shoulder, took her to the ground, and dragged her across the precinct into a cell. *See Morales v. City of New York*, No. 99 Civ. 10004 (DLC), 2001 WL 8594, 10 (S.D.N.Y. Jan. 2, 2001) (reducing jury award of $2.75 million to $50,000 for "deep bruises" and months of counseling caused by altercation with police during which officer held plaintiff tightly by upper arms and forced her into police car); *Lewis v. City of Albany Police Dep't*, 547 F.Supp.2d 191, 206–10 (N.D.N.Y. 2008) (concluding that $65,000 damages award did not shock conscience where plaintiff experienced contusions, swelling, and headaches due to officer standing on his head and grinding his face into pavement); *Hightower v. Nassau Cty. Sheriff's Dep't*, 325 F. Supp. 2d 199, 207–09 (E.D.N.Y.) (awarding $65,000 where two altercations with guards left pretrial detainee with bruises and contusions, swollen upper lip, and pain in the lumbar spine, without rendering permanent damage), *vacated in part on other grounds by* 343 F. Supp. 2d 191 (E.D.N.Y. 2004).

## B. The Jury's Punitive Damages Award is Appropriate

The jury's punitive damages award of $200,000 for excessive force and $400,000 for false arrest are appropriate under the circumstances of the case and should be upheld.  Here, the jury's finding that Lieutenant Miranda falsely accused Ms. Natoo of hitting him with a backpack to justify his unlawful arrest and use of excessive force more than establishes the type of callous indifference and reprehensibility required for this type of punitive damages award.  The Supreme Court, in *B.M.W. of North America v. Gore,* 517 U.S. 559 (1996), set forth three guideposts for determining whether a punitive damages award is reasonable: (1) the degree of reprehensibility of the defendant's conduct; (2) the ratio of punitive damages to compensatory damages; and (3) the difference between this remedy and damages imposed in comparable cases.

When examining reprehensibility, the Court considers whether the defendant ": (1) engaged in violent conduct; (2) acted with malice or deceit; and (3) ha[s] engaged in repeated acts of misconduct."  *Alla v. Verkay*, 979 F. Supp. 2d 349, 373–74 (E.D.N.Y. 2013).  When Lieutenant Miranda slammed into Ms. Natoo's shoulder, took her to the ground, placed his knee into her back, handcuffed her, and dragged her across the precinct floor, he clearly engaged in violent conduct and excessive force.  Similarly, his fabricated story, that Ms. Natoo swung her back pack full of books and struck him in the head, along with his initial claim that he had no idea why Ms. Natoo was present at the precinct, until he was impeached with Arel Joseph's medical treatment form, are both the types of deceit supportive of this jury's punitive damages award.  Third, although repeated acts of misconduct were not elicited on the record, this Court should consider the need to hold officers in positions of leadership and authority, like Lieutenant Miranda, accountable.  Lieutenant Miranda, a sergeant at the time of this incident, was responsible for supervising and training officers at the 67th precinct.  This type of violent conduct

21

and deceit should be examined with heightened scrutiny when committed by an officer of his stature.

The second "guidepost" in *Gore* instructs us to look at "whether there is a reasonable relationship between the punitive damages award and *the harm likely to result* from the defendant's conduct as well as the harm that actually has occurred." 517 U.S. at 581, 116 S.Ct. 1589.  Although the *Gore* Court noted that the 500–to–1 ratio of punitive to compensatory damages in the case influenced its decision that the punitive award was unreasonable, the Court also repeatedly stressed the impossibility of making any bright-line test, as the propriety of the ratio can vary enormously with the particular facts of the case.  *See id.* at 582–83, 116 S. Ct. 1589.

Here the false arrest ratio of $200,000 in punitive damages to $40,000 in compensatory is only 5 to 1.  In light of the above factors related to falsifying evidence for probable cause and use of excessive force during the arrest this punitive damages award is well within the acceptable bounds of the Second Circuit.  *See e.g., Payne v. Jones,* 711 F.3d 85, 103 (2d Cir. 2013) (upholding a punitive damages award of 5 to 1 or $300,000 punitive damages and $60,000 compensatory).

The excessive force ratio, although significantly higher at $400,000 in punitive damages to $10,000 compensatory or 40 to 1, remains appropriate because of the high degree of reprehensibility of Lieutenant Miranda's actions.  As in cases such as this, where the plaintiff does not claim a great degree of injury, but where the:

> reprehensibility of the defendant's conduct was great, the ratio of a
> reasonable punitive award to the small compensatory award will necessarily be
> very high."  *See, e.g., State Farm,* 538 U.S. at 425 ("[R]atios greater than those
> we have previously upheld may comport with due process where a particularly
> egregious act has resulted in only a small amount of economic damages."
> (internal quotation marks omitted)); *Lee,* 101 F.3d at 811 ("[I]n a § 1983 case in

22

which the compensatory damages are nominal, a much higher ratio can be contemplated.... [T]he use of a multiplier to assess punitive damages is not the best tool....").

If in such cases significant punitive awards are not available, because of the high ratio in relation to the compensatory award, a plaintiff will often be unable to sue as attorneys would be unable to collect a reasonable fee through a contingency arrangement. Thus, in cases of very small injury but very reprehensible conduct, the appropriate ratios can be very high. In *Lee,* for instance, the plaintiff was awarded $1 in nominal damages and $200,000 in punitive damages on his malicious prosecution claim under 42 U.S.C. § 1983 against a police officer who attacked him and then falsely accused him of assault. *See Lee,* 101 F.3d at 807–08. On appeal, we reduced the punitive damages to $75,000. *See id.* at 813. Even after the remittitur, the ratio was huge at 75,000 to 1. But 75,000 to 1 was an appropriate ratio on those facts. In such cases, the large size of the ratio has no necessary bearing on the appropriateness of the amount of punitive damages.

*Id.* at 102.  Thus, although a ratio of 40 to 1 is on the higher side, it is appropriate where exceptionally reprehensible conduct, such as fabricating evidence for probable cause to cover up the use of excessive force, is significantly greater than the physical harm caused.  Here, Ms. Natoo's physical injuries were not exceptional, but Lieutenant Miranda's behavior was exceptionally reprehensible, justifying this punitive damage award.

Under the third prong, these awards are reasonable when compared to penalties for similar conduct.  Ms. Natoo arrived at the 67th precinct to figure out what was happening to her 14-year old son, if he was injured, and if he could be released to her; it was in this context that she was slammed into, taken to the ground, dragged across the precinct, and charged and held for 27 hours based on evidence fabricated by Lieutenant Miranda.  In similarly egregious contexts, Courts have upheld serious punitive damages verdicts.  The following verdicts are adjusted for inflation.  *See, e.g., Ismail v. Cohen*, 899 F.2d 183 (2d Cir. 1990) (roughly $296,000 in 2020 dollars against a single officer); *King v. Macri*, 993 F.2d 294 (2d Cir. 1993) (roughly $267,789 in 2020 dollars for two officers); *Thomas v. Kelly*, 903 F. Supp. 2d 237, 270 (S.D.N.Y. 2012) (roughly $224,719 in 2020 dollars against a single officer).

Here, based on the reprehensible nature of Lieutenant Miranda's conduct, combined with his great responsibility, these damages awards are justified and should be upheld.

## CONCLUSION

For the foregoing reasons the Court should deny Defendant's post trial motion in its entirety.

Dated:  New York, New York
        March 10, 2020

Respectfully Submitted,

L&S
LORD & SCHEWEL ᴾᴸᴸᶜ

By:

Abraham Rubert-Schewel
Lord & Schewel PLLC
233 Broadway, Suite 2220
New York, NY 10279
W: 212-964-0280
C:  919-451-9216
E:  Schewel@nycivilrights.nyc

RICKNER PLLC

By:    /s/

Rob Rickner
Rickner PLLC
233 Broadway Suite 2220
New York, New York 10279
Phone: (212) 300-6506
Fax: (888) 390-5401

24